640 A.2d 896

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Abdul RASHEED, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1992.

Decided April 25, 1994.

568

John W. Packel, Chief Appeals Div., Peter Rosalsky, Philadelphia, for appellant.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., Hugh J. Burns, Jr., Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

The questions presented are: whether it is error for the trial court to instruct the jury that it may draw no adverse inference from the decision of the defendant not to testify, when a specific request to omit the instruction has been made; and if so, is the error harmless.[1] We find that the trial court

1. The standard jury instruction regarding a defendant's right not to testify is typically referred to as the "no adverse inference" charge, and shall be so referenced throughout this opinion. Although a trial court is free to give the instruction in its own words, as was done in the present case, the essence of the charge is found in the Pennsylvania Suggested Standard Criminal Jury Instructions:

3.10A (Crim) *DEFENDANT'S FAILURE TO TESTIFY NOT EVIDENCE OF GUILT*
It is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify.

erred in giving the charge over the objection of defense counsel and that the error was not harmless.

This issue arises out of a rape prosecution where the defendant, having asserted a consent defense, chose not to testify. During the discussions regarding the points for charge defense counsel requested that the court omit the no adverse inference charge when instructing the jury. Counsel stated that this was his strategy in cases where the defendant did not testify as he feared that the instruction would focus the jurors' attention upon the failure of the defendant to take the stand in his own behalf. The trial court refused the request of counsel to omit the no adverse inference instruction.

The defendant was ultimately convicted of rape. An appeal from the judgment of sentence was taken to the Superior Court. A panel of that Court affirmed the decision of the trial court to give the no adverse inference charge, holding that it can never be error to give the charge even where the defendant requests that it be omitted. One judge dissented. 392 Pa.Super. 280, 572 A.2d 1232.

Upon granting the appellant's request for reconsideration, the case was heard by the Superior Court en banc. The majority held that it was error for the trial court to have given the instruction when a specific request to omit it had been made by defense counsel. However, the majority went on to find that the error was harmless. One judge concurred, two judges filed concurring and dissenting opinions, a fifth judge dissented on the basis that the issue had been waived.[2] This Court granted allocatur.

In *Commonwealth v. Edwards*, 535 Pa. 576, 637 A.2d 259 (1993), this Court addressed the identical issue raised in the instant case, *i.e.*, "what happens where the defendant does not want [the no adverse inference] charge to be given." *Id.* at

---

**2.** We have reviewed the record and conclude that the majority opinion of the Superior Court correctly addressed the question of waiver and properly concluded that the issue had been preserved for appellate review. We further note that the Commonwealth has never asserted that the issue was not properly preserved.

575, 637 A.2d at 259.[3] The Court acknowledged the holding of the United States Supreme Court in *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), that giving the instruction over the defendant's objection does not violate the defendant's Fifth Amendment right against self-incrimination. The *Edwards* Court decided, however, as a matter of state law, that giving the instruction over a defendant's objection would be *per se* reversible error in the future. The *Edwards* Court grounded its decision upon the following rationale:

> The most sensible of the various judicial approaches is to allow the defendant to decide whether the instruction should be given in any particular case. The desirability of the instruction is a matter of trial strategy, and will therefore vary from case to case. The purpose of the instruction is to prevent the jury from considering the defendant's silence as evidence of guilt, and the defendant himself will normally be in the best position to decide whether or not the giving of the instruction will serve this end.

*Id.* 535 Pa. at 575, 637 A.2d at 259 [*quoting* Green, *The Failure to Testify Instruction,* 14 Willamette L.Rev. 43, 51 (1977)].

In accordance with the decision in *Edwards,* we conclude that the trial judge in the instant case erred in giving the no adverse inference instruction over the objection of the defendant. However, the rule announced in *Edwards* was specifically prospective. In fact, the rule announced in *Edwards* was not applied therein; instead the trial court' decision to give the instruction was reviewed under a harmless error analysis. Accordingly, as the instant case was tried before the rule in *Edwards* was announced we must determine if the giving of the no adverse inference instruction in this case, was harmless error.

■ The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair

---

**3.** This author filed a concurring and dissenting opinion in *Edwards,* arguing against the imposition of a *per se* rule.

trial, not a perfect trial. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). The proper analysis to be undertaken was thoroughly explained in *Story:*

This Court has stated that an error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If "honest, fair minded jurors might very well have brought in not guilty verdicts," an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

We have cautioned that:

"a conclusion that the properly admitted evidence is 'so overwhelming' and the prejudicial effect of the. . . . error is 'so insignificant' by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly."

Accordingly, we have been reluctant to find an error harmless on the basis of overwhelming evidence.

*Id.* at 412–413, 383 A.2d at 166 [footnote omitted; citations omitted].

 In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error is harmless beyond a reasonable doubt rests upon the Commonwealth. *Commonwealth v. Lewis* 528 Pa. 440, 598 A.2d 975 (1991); *Commonwealth v. Bricker,* 525 Pa. 362, 581 A.2d 147 (1990).

The instant case involved a charge of rape which rested primarily upon the testimony of the victim. As in most sexual assault cases, there were no eyewitnesses, other than the

victim, and no objective physical evidence. The scientific evidence which revealed the presence of spermatozoa in the victim's underwear was stipulated to by the defendant, as he never disputed having sexual intercourse with the victim.

In her testimony the victim stated that she had casually befriended the defendant when he was working on a construction site that she passed daily on her way to and from work. The two began talking about their respective jobs, with the victim agreeing to help the defendant find another position when his construction job was completed. Occasionally the victim would bring the defendant food or beverages at his work site and he would often escort her to her job. On the day of the alleged rape, the defendant appeared at the victim's home between 9:30 a.m. and 10:00 a.m. to return a beverage container in which she had previously brought him something to drink. The victim entertained him in her kitchen for some time, then escorted him to the door, saying that she needed to go to work. The defendant asked for a kiss the victim refused. At that point, the defendant drew a knife and forced her into the bedroom where he then forced her to have sexual intercourse. The victim protested and additionally attempted to dissuade him by explaining that she was presently menstruating. Her protestations were to no avail. The defendant forced his penis into her vagina then ejaculated upon her stomach. The victim then went into the bathroom, cleaned herself and dressed for work. The defendant escorted her to her place of employment.

In addition to the victim, the Commonwealth presented the testimony of two of the victim's co-workers who each testified, that on the day in question, the victim told them that she had been raped at knife point. One of those witnesses was impeached by a prior inconsistent statement, wherein she had told an investigator for the defendant that she knew nothing about the incident. In addition, that witness on re-direct stated that she was present in court to help the victim, a statement indicative of bias.

Although the defendant did not testify in his own behalf, his counsel presented his claim of consent through cross-examina-

tion, pointing out that the victim admitted to a prior friendship with the defendant, that she invited him into her apartment on the morning in question, and that after the alleged assault he walked her to work.

A harmless error analysis requires a determination by the appellate court that the uncontradicted evidence of guilt is so overwhelming and that the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error is harmless. *Story,* 476 Pa. at 413, 383 A.2d at 166. Under the circumstances of this case, such a conclusion cannot fairly be reached. The error at issue reflected directly upon how the jury was to view the testimony, or lack thereof, in reaching their verdict. Under the circumstances of this particular case we cannot determine what effect, if any, the no adverse inference instruction had upon the jury, or what effect its absence would have had upon the jury. However, we can conclude that the evidence of guilt was *not* so overwhelming as to render the error so insignificant by comparison that it is clear beyond a reasonable doubt that the error is harmless. Accordingly, we are constrained to find that the decision of the trial court to instruct the jury under the no adverse inference charge over the objection of the defendant in this particular case was not harmless error.

The judgment of sentence is reversed and the matter is remanded for a new trial.

Senior Justice MONTEMURO, who was an appointed Justice of the Court at the time of argument, did not participate in the consideration or decision of this case.*

Mr. Justice LARSEN did not participate in the decision of this case.

* Mr. Justice MONTEMURO is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of Mr. Justice LARSEN, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.