COMMONWEALTH of Pennsylvania,
Appellee

v.

David DRUMMOND, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 15, 2000.
Filed April 25, 2001.

Clasina Mahoney, York, for appellant.

Heather L. Adams, Asst. Dist. Atty., York, for the Com., appellee.

Before McEWEN, President Judge, DEL SOLE, KELLY, POPOVICH, JOHNSON, JOYCE, MUSMANNO, ORIE MELVIN, and LALLY–GREEN, JJ.

JOYCE, J.:

¶ 1 Appellant, David Drummond, appeals from the judgment of sentence entered following his conviction for possession of a controlled substance with the intent to deliver (PWID).[1] For the reasons set forth below, we affirm.[2] The relevant facts and procedural history of this case are as follows.

¶ 2 On October 6, 1998, pursuant to a warrant obtained based on information provided by a confidential informant regarding a prior drug sale, the police executed a search warrant at Appellant's third floor apartment.[3] In order to enter the apartment, the police climbed up a fire escape to a second floor door from which they entered and ascended to the third floor. At the time, Appellant's apartment door was open. Upon entering the apartment, the police observed Appellant sitting at the foot of his bed. The police immediately placed Appellant in custody and proceeded to search the apartment pursuant to the warrant.

¶ 3 The police immediately discovered and seized two small heat-sealed pink Ziploc packets of cocaine and $75 on Appellant's person, as well as three clear bags of cocaine, a bag containing thirty pink Ziploc bags and $205 in cash in the vicinity of where Appellant had been sitting.[4] All of these items were in plain view. Upon being advised of his rights and following his arrest, Appellant stated that he was not a drug pusher, but was just attempting to make some money to return to Jamaica. A March 16–18, 1999 jury trial ended with a mistrial due to the jury's inability to arrive at a verdict. Following a November 5, 1999 jury trial, Appellant was convicted of the instant offense. On December 22, 1999, the court sentenced Appellant to two (2) to four (4) years' imprisonment pursuant to the mandatory sentencing requirement contained within 18 Pa.C.S.A. § 6317.[5] Appellant obtained new counsel after which this timely appeal followed.

¶ 4 This matter was originally assigned to a panel of this Court for disposition. However, this Court *sua sponte* referred

---

1. 35 P.S. § 780–113(a)(30).

2. Our decision today is consistent with our holding in the companion case of *Commonwealth v. Hinds*, No. 1518 MDA 1999 (*en banc* circulating opinion, vote date February 26, 2001).

3. The main entry of the building is secured and a key is required in order to enter.

4. The term heat-sealed is used to refer to the process of melting the ends of the Ziploc bags in order to hold the contents of the packet together.

5. Appellant's apartment is located 587 feet from St. Rose of Lima School.

this case for *en banc* review. This matter therefore is now ripe for disposition.

¶ 5 Appellant has raised the following issues for our review: (1) whether trial counsel was ineffective for failing to object to the admission of hearsay testimony by Detective Philip Roberts regarding the information obtained from the confidential informant; (2) whether the evidence was insufficient to prove PWID; (3) whether the trial court erred by sentencing Appellant pursuant to the mandatory provision contained within 18 Pa.C.S.A. § 6317; and (4) whether trial counsel was ineffective for failing to object to the prosecutor's closing statement.

¶ 6 Appellant initially argues that trial counsel was ineffective for failing to object to the hearsay testimony of Detective Philip Roberts. With regard to the issue of counsel's ineffectiveness, we recognize that:

> The threshold inquiry is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be ineffective for failing to assert a meritless claim. Once this threshold is met we apply the reasonable basis test to determine whether counsel's chosen course was designed to effectuate his client's interest. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. The burden of establishing counsel's ineffectiveness is on the [defendant] because counsel's stewardship of the trial is presumptively effective.

*Commonwealth v. Wilson*, 543 Pa. 429, 440, 672 A.2d 293, 298, *appeal denied*, 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996) (citation and quotation marks omitted).

¶ 7 Detective Roberts testified to the information contained within the affidavit of probable cause utilized to obtain the search warrant, primarily the confidential informant's description of the individual who had sold him drugs, the events transpiring on the date of the drug sale, and the informant's reliability. The confidential informant did not testify at the time of the trial. Therefore, Appellant alleges that this constituted impermissible hearsay testimony. "A 'hearsay' statement is an out-of-court statement offered in court to prove the truth of the matter asserted." *Commonwealth v. Collazo*, 440 Pa.Super. 13, 654 A.2d 1174, 1177 (1995).

> [I]t is well-settled that an out-of-court statement offered to explain a course of conduct is not hearsay . . . .

> This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest.

> The Pennsylvania Supreme Court has cautioned that such course of conduct testimony must bear close scrutiny prior to being admitted into evidence. The Court said:

> Nevertheless, it cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-

examine and confront the witnesses against him.

Clearly, there is need for a balance to be struck between avoiding the dangers of hearsay testimony and the need for evidence that explains why police pursued a given course of action. This balancing process is governed by the sound discretion of the trial court, and, as with other evidentiary decisions, the trial court's decision will be upheld on appeal unless there has been an abuse of that discretion.

*Id.* at 1178 (citations and quotation marks omitted).

 ¶ 8 Upon carefully reviewing the record in this case, we are not convinced that the evidence adduced at trial was not improperly admitted, in that the evidence, although not expressly introduced to prove the truth of the matter asserted therein, in effect did establish that Appellant did sell the drugs to the confidential informant.[6] However, in spite of this finding, it is clear that any error was harmless.

The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. The proper analysis to be undertaken was thoroughly explained in [*Com. v.*] *Story*[, 476 Pa. 391, 383 A.2d 155]:

This Court has stated that an error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Under this approach, a review-

ing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If "honest, fair minded jurors might very well have brought in not guilt verdicts," an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict. We have cautioned that:

"A conclusion that the properly admitted evidence is 'so overwhelming' and the prejudicial effect of the .... error is 'so insignificant' by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly."

Accordingly, we have been reluctant to find an error harmless on the basis of overwhelming evidence.

In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error is harmless beyond a reasonable doubt rests upon the Commonwealth.

*Commonwealth v. Rasheed,* 536 Pa. 567, 570–571, 640 A.2d 896, 898 (1994).

 ¶ 9 In considering the applicability of the harmless error standard, we must necessarily turn to the resolution of the second issue presented for our review. Appellant challenges the sufficiency of the evidence to prove PWID. In determining whether there was sufficient evidence to sustain a charge of possession with intent to deliver, all facts and circumstances sur-

---

**6.** We note that the Commonwealth does not essentially argue against the fact that this testimony is hearsay. Rather, the Commonwealth contends that trial counsel used this evidence to Appellant's advantage, basically to further Appellant's theory that the police or another resident of the boarding house planted the drugs in Appellant's apartment. Therefore, the Commonwealth argues that counsel cannot be deemed ineffective based on a reasonable trial strategy.

rounding the possession are relevant and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence. *Commonwealth v. Williams,* 419 Pa.Super. 380, 615 A.2d 416, 418 (1992), *appeal denied,* 533 Pa. 651, 624 A.2d 110 (1993). Possession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of drug paraphernalia. *Commonwealth v. Torres,* 421 Pa.Super. 233, 617 A.2d 812, 814 (1992), *appeal denied,* 535 Pa. 618, 629 A.2d 1379 (1993). *See also Commonwealth v. Campbell,* 418 Pa.Super. 391, 614 A.2d 692 (1992), *appeal denied,* 535 Pa. 630, 631 A.2d 1003 (1993) (finding that defendant possessed cocaine with intent to deliver was sufficiently supported by expert testimony that the pound of cocaine seized from defendant and his two companions was more than one would possess for purely personal consumption).

¶ 10 Appellant argues that the evidence was insufficient to prove he intended to sell the cocaine. Rather, Appellant claims that the evidence is more consistent with a finding that the cocaine was for personal consumption. We disagree. At the jury trial, Detective Philip Roberts testified that pursuant to the search warrant, $75 and two packets of cocaine were seized from Appellant's person. N.T., 11/5/99, at 34. Furthermore, three clear bags of cocaine, $205 in cash, and thirty smaller ziploc bags were seized from the area within where Appellant had been sitting. *Id.* at 35–36. Each of these bags was heat-sealed. *Id.* at 36. Appellant himself stated that although he was not a "drug pusher," he had been selling drugs in order to make money to return to Jamaica. *Id.* at 54.

¶ 11 Officer John Daryman testified as an expert on the packaging and distribution of narcotics. Officer Daryman considered that approximately six (6) grams of cocaine were seized, with a street value of approximately $790. *Id.* at 98–100. Although no mechanism to heat-seal the packages was found, or other drug distributing paraphernalia, i.e., cellular phone, pager or scales, Officer Daryman stated that in his opinion, circumstances such as those present here were indicative of possessing cocaine with the intent to deliver. *Id.* at 103. His opinion, in large part, was based on the fact that someone would not likely possess such a large amount of cocaine without the intent to sell it. *Id.* at 98. Furthermore, Officer Daryman considered the amount and denomination of the cash, the empty smaller ziploc bags often used to package cocaine and Appellant's own statements in making his determination. *Id.* at 103. After a consideration of the totality of the circumstances, we are satisfied that the Commonwealth has met its burden to establish PWID. Therefore, the trial court did not err in its determination. Based on this finding, likewise, we cannot find counsel ineffective regarding failure to object to hearsay testimony pertaining to information contained within the search warrant, for it is clear that any perceived error would be harmless due to the overwhelming evidence of guilt presented, even absent the improperly admitted evidence.

¶ 12 Appellant next complains that the trial court erred by sentencing him pursuant to the mandatory provision contained within 18 Pa.C.S.A. § 6317.

> The imposition of sentence is vested within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Only the appellate court with initial jurisdiction over an appeal may review discretionary aspects of sentencing. The trial court's exercise of discretion, however, is not at issue here.

*Commonwealth v. Collins,* 564 Pa. 144, 764 A.2d 1056, 1057 (2001). The issue presently is the application of the mandatory provision, which implicated the legality of sentence. *See Commonwealth v. Vasquez,* 560 Pa. 381, 744 A.2d 1280 (2000) (finding that application of mandatory provision implicates the legality, not the discretionary, aspects of sentencing). Therefore, we will now address Appellant's claim.

¶ 13 In relevant part, the mandatory sentencing statute states:

**Drug Free School Zones.**

(a) **General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64 [35 P.S. § 780–113(a)(14) or (30)]) known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.

If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

18 Pa.C.S.A. § 6317(a).

¶ 14 Appellant does not dispute that his apartment was located 587 feet from St. Rose of Lima School. However, Appellant argues that despite the location of his apartment, the provisions of this section could not apply to him because his apartment was not open to the general public, especially to children. We disagree. This Court has previously considered the rules of statutory construction and analyzed the legislative intent in enacting this statute when discussing the applicability of this sentencing provision with regards to a playground. The same considerations apply to the decision which we render in this case, therefore, we will restate this Court's prior findings for purposes of our discussion. Relevantly, this Court has stated:

In construing the enactments of the legislature, appellate courts must refer to the provisions of the Statutory Construction Act. In determining the meaning of a statute, we are obliged to consider the intent of the legislature and give effect to that intention. Courts may disregard the statutory construction rules only when the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly. The General Assembly, in clarifying the proper approach to be used in the determination of legislative intent, stipulated that:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute

shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

We are to give the words of a statute their plain and ordinary meaning. We are required to construe words of a statute...according to their common and accepted usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. Moreover, the Pennsylvania Supreme Court held than when interpreting a statute, presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect....

*Commonwealth v. Campbell,* 758 A.2d 1231, 1233–1234 (Pa.Super.2000) (citations and quotation marks omitted). With regards to interpreting this particular statute, this Court stated as follows:

Prior to the enactment of section 6317, "Youth/School Enhancement" was the title of the previously controlling enhancement provision, which only applied to areas "within 1000 feet of a public or private elementary or secondary school." It is our interpretation that the General Assembly regarded this statute as insufficient and, therefore, enacted 18 Pa. C.S.A. § 6317 to rectify those insufficiencies. By enacting section 6317 in place of its predecessor, the Pennsylvania General Assembly not only intended to protect our children from the evils of illegal drug dealing on school grounds and on school buses, but additionally intended to protect our children from those same evils on or near their playgrounds and recreation centers, whether associated with municipal facilities, school property or, as in this present case, semiprivate apartment complexes....

It is our finding that the General Assembly's goal and purpose [in enacting this statute] was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of section 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent. The statute protects our children **"within 1000 feet of the real property on which is located a public, private or parochial school or a college or a university."** Furthermore, it protects our children on their way to and from school on their school bus. Finally, it protects our children in the places where they routinely play. The General Assembly did not choose to

limit this protection solely to school play areas or municipal facilities, but chose to reinforce the purpose of the statute by including all areas within 250 feet of the real property on which is located a recreation center or playground.

*Id.* at 1236–1237 (citations and quotation marks omitted) (emphasis original).

¶ 15 Applying the rules of statutory construction and adopting this Court's prior interpretation of the legislative intent in enacting this statute, Appellant's argument must fail. In finding that the legislative intent of the statute is to protect the children of our communities from the harms attendant to the drug trade, we must necessarily determine that such harms are present when the individual merely resides within the mandatory 1,000 feet vicinity of a school, even when the drugs are not necessarily accessible to children. To hold otherwise would emasculate the meaning of "Drug Free School Zone." We cannot interpret the word, "zone," to exclude a residence which is clearly within the zone but not readily accessible by school age children. As discussed earlier, the statute is intended to curtail not only drug transactions involving children, but also to protect young children from all illegal activity which is necessarily attendant with the drug trade. The statute clearly does not require anything more than the actor delivering or possessing drugs within the requisite distance from the school. Contrary to Appellant's argument, we refuse to further require that the place from which the drugs are sold be open to the public.

¶ 16 Our findings today are consistent with the findings of another jurisdiction on a related matter. When deciding the constitutionality of a similar statute in Maryland, the Court of Appeals of that state determined that the sentencing provision applied regardless of the presence or absence of children in the area at the relevant time. *Dawson v. State of Maryland,* 329 Md. 275, 619 A.2d 111 (1993). Implicit in that court's findings is that whether or not the drugs are in fact accessible to children is irrelevant. Rather, it is protecting the children from all the attendant harms of the drug trade which is of paramount concern.[7] Therefore, the fact that no children were present and that Appellant's apartment was not open to the public is of no consequence. Appellant's argument to the contrary must fail.

¶ 17 Lastly, Appellant complains that trial counsel was ineffective for failing to object to the prosecutor's closing statement.

It is well settled that a district attorney must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. A new trial is not mandated every time a prosecutor makes an intemperate or inappropriate remark. We will find reversible error only if the prosecutor has deliberately attempted to destroy the objectivity of the fact finder such that the unavoidable effect of the inappropriate comments would be to create such bias and hostili-

---

7. We note further the enactment of 18 Pa. C.S.A. § 6314 (Sentencing and penalties for trafficking drugs to minors). This section applies when the sale is actually to a minor. The existence of this section, along with the reference to its applicability in § 6317, further supports our findings that accessibility to the drugs by the minors is not a factor detrimental to the application of the provisions of section 6317. Rather, a separate provision exists to address that offense.

ty toward the defendant that the jury could not render a true verdict.

*Commonwealth v. Brown,* 551 Pa. 465, 487–488, 711 A.2d 444, 454 (1998).

¶ 18 The questionable comments were made during closing argument and were made in reference to Appellant's argument that someone, likely a police officer, had planted the drugs in Appellant's apartment. Notably, closing argument is not evidence. Furthermore, upon review of the record, it is clear that the prosecutor made the comments in response to repeated references to the credibility of the witnesses. Critically, a prosecutor may respond to challenges to his witnesses' credibility. *See Commonwealth v. Thompson,* 442 Pa.Super. 447, 660 A.2d 68, 72, *appeal denied,* 544 Pa. 629, 675 A.2d 1247 (1996) (finding that prosecution's comments regarding credibility were permissible when they were motivated by defense counsel's prior attacks on Commonwealth witnesses' credibility). The challenged comments were fair responses to arguments/statements presented by Appellant during his closing argument. Therefore, counsel cannot be deemed ineffective for failing to object to such argument. Finding no basis upon which to disturb the findings of the trial court, we affirm.

¶ 19 Judgment of sentence affirmed.

¶ 20 JOHNSON, J. files a concurring opinion in which McEWEN, President Judge joins.

¶ 21 DEL SOLE, J. files a concurring and dissenting statement.

JOHNSON, J., concurring:

¶ 1 I concur in the result reached by the Majority, affirming the trial court's imposition of the sentence enhancement under 18 Pa.C.S. § 6317 (Drug-free school zones). Initially, I conclude that the Majority's interpretation of section 6317 is flawed because it fails to restrict application of the sentencing enhancement for convictions of possession with intent to deliver, 35 P.S. § 780–113(a)(30), to circumstances where the defendant intended delivery *within* the designated drug-free school zone. *See Commonwealth v. Hinds,* 2001 PA Super 121, 2001 WL 418933, No. 1518 MDA 1999 (*en banc*) (Johnson J. dissenting). However, I conclude also that even under the more limited interpretation I have discussed in *Hinds,* the defendant in this case, David Drummond, is properly subject to application of the enhancement. In contrast to *Hinds,* the evidence adduced against Drummond demonstrated the defendant's intent to distribute the controlled substances he possessed within the drug-free school zone.

¶ 2 Initially, a confidential informant told York police that Drummond was making drug sales from his apartment, which was located 587 feet from St. Rose of Lima School. Based on the informant's tip, police obtained a search warrant for Drummond's apartment. Upon entering, police discovered two small heat-sealed pink Ziploc packets containing small quantities of cocaine, three clear bags containing larger quantities of cocaine, and another bag containing thirty small pink Ziploc bags. Additionally, Police discovered $280 in cash in the immediate vicinity of Drummond's person. Drummond told the arresting officers that he "was not a big—not a drug pusher … he was just selling a little to make a little money to buy a plane ticket back to Jamaica." Police did not recover any personal use paraphernalia from Drummond's apartment. At trial a police witness assessed the street value of the cocaine at $770, and opined that such a quantity was not likely for personal use. Further, the averments of the search warrant, that a confidential informant had wit-

nessed drug sales from Drummond's apartment, were introduced at trial without objection from Drummond's counsel.

¶ 3 I conclude that the evidence of Drummond's conduct of prior drug sales from his apartment coupled with his close proximity to the school and his possession of a substantial amount of cash is sufficient to sustain a finding that Drummond had recently completed drug sales for cash within the school zone. Further, Drummond's possession of multiple pink bags of the same type used to package small amounts of cocaine, together with his possession of larger amounts of the drug itself, and the absence of any personal use paraphernalia from Drummond's apartment establishes his intent to engage in further distribution consistent with his prior sales.

¶ 4 Accordingly, I concur in the Majority's determination that Drummond is properly subject to the sentencing enhancement provided by 18 Pa.C.S. § 6317.

¶ 5 McEWEN, President Judge joins this concurring opinion.

DEL SOLE, J., concurring and dissenting:

¶ 1 I join the majority except in its application of 18 Pa.C.S.A. § 6317 for the reasons expressed in my dissenting statement in *Commonwealth v. Hinds*, 2001 PA Super 121, 2001 WL 418933, No. 1518 MDA 1999 (en banc) (Del Sole, J. dissenting).