J-A30032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ISAAC NOEL TAYLOR | : | |
| | : | |
| Appellant | : | No. 42 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 3, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0002718-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ISAAC N. TAYLOR | : | |
| | : | |
| Appellant | : | No. 65 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 3, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0002693-2016

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JANUARY 14, 2020**

Appellant, Isaac Noel Taylor, appeals from the aggregate judgment of

sentence of 21 to 42 years of confinement, which was imposed after his jury

trial convictions for one count each of criminal attempt to commit murder,

aggravated assault (felony of the first degree), aggravated assault (felony of

_____

[*] Retired Senior Judge assigned to the Superior Court.

the second degree), simple assault (misdemeanor of the second degree), simple assault (misdemeanor of the first degree), and recklessly endangering another person and bench trial convictions for two counts of harassment – subjects the other person to physical contact.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case.  **See** Trial Court Opinion ("Trial Ct. Op."), filed July 8, 2019, at 4-11.  Therefore, we have no reason to restate them at length here.

For the convenience of the reader, we briefly note that Appellant's convictions stem from two separate incidents on September 19 and October 20, 2016.  The victim in both incidents was Appellant's ex-girlfriend, Faith Bronson ("Victim").  **See id.** at 4.  In the first incident, Appellant beat and shoved Victim, bruising her ribs and chin and spraining her foot.  **Id.** at 6-7 (citing N.T., 9/18/2018, at 104-08).  In the second incident, Appellant beat, strangled, and stabbed Victim, resulting in Victim suffering a broken nose, a broken orbital wall, a broken scapula, multiple broken ribs, shock, significant blood loss, trauma to her eyes, two punctured and collapsed lungs, a weakened pulse, and three stab wounds to her upper arm, back, and chest.  **Id.** at 8-9 (citing N.T., 9/18/2018, at 134-37, 146, 149, 195-97); **see also id.** at 48 (citing N.T., 9/19/2018, at 112-13, 124-25, 147).

---

[1] 18 Pa.C.S. § 901(a), 2702(a)(1), (4), 2701(a)(1)-(2), 2705, and 2709(a)(1), respectively.

Prior to trial, on May 29, 2018, the Commonwealth filed a motion *in limine* to introduce Appellant's "prior bad acts" pursuant to Pa.R.Crim.P. 404(b),[2] but, on August 28, 2018, the Commonwealth filed a motion to withdraw this motion *in limine*. On September 4, 2018, the trial court entered an order granting the Commonwealth's motion to withdraw its motion *in limine*.

Appellant's trial lasted three days. In his opening statement, Appellant's counsel told the jury that the issue in this case was not whether Victim's injuries were life-threatening but whether the injuries were self-inflicted. ***See*** N.T., 9/17/2018, at 57.

---

[2]    **(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

The Commonwealth presented the testimony of Officer Kevin Davis, who responded to the September 2016 incident, testified at trial --

> that while working, he was dispatched to Regional Hospital "to meet with a Victim of an assault." N.T., 9/19/2018, [at] 44. He noted that immediately upon entering her hospital room, he "noticed she had a bruise on her chin." *Id.* [Victim] then showed him her right foot, which was swollen, and complained of pain in her rib area. *Id.* Officer Davis observed that Victim was crying, upset and in pain. *Id.* Upon interviewing her, the officer learned that the incident was domestic, and [Victim] indicated that "her live-in boyfriend, Isaac Taylor, assaulted her" because "[h]e thought she was cheating on him." *Id.* at 45. . . . He explained that he attempted to locate Appellant at his home on New Street in Scranton to no avail then spoke to him briefly on the phone. *Id.* at 48. Appellant told the officer that he was out of town with his mother and hung up on him. *Id.* Officer Davis obtained a warrant at that point, having advised [Victim] to obtain a [protection from abuse order] against Appellant. *Id.* at 48, 50.

*Id.* at 51-52 (some formatting). Photographs of Victim's injuries were "introduced through Officer Davis[.]" *Id.* at 52 (citing N.T., 9/19/2018, at 46-47).

Detective Joseph Castellano, a crime scene investigator for the Scranton Police Department, testified that he collected a sweatshirt with a bloodstain from the crime scene. N.T., 9/19/2018, at 74. "DNA Analyst Zachary Tanczos confirmed the presence of a mixture of DNA from [Victim] and [Appellant] in a bloodstain on the sleeve of the sweatshirt[.]" Trial Ct. Op., filed July 8, 2019, at 9 (citing N.T., 9/18/2018, at 91-92).

The Commonwealth further presented the expert medical testimony of Dr. Ryan Rambaran, a general surgeon working in the Trauma Department at Geisinger Community Medical Center in Scranton, who cared for Victim's

injuries after the October incident. Dr. Rambaran described Victim's injuries from the October assault as "life-threatening[.]" N.T., 9/19/2018, at 97. The Commonwealth then asked him whether he had an opinion as to whether Victim's injuries were self-inflicted. *See* Trial Ct. Op., filed July 8, 2019, at 27-28 (citing N.T., 9/19/2018, at 97). Before the witness could reply, Appellant immediately objected and asked for a mistrial, stating that this question was beyond the scope of the doctor's written expert report and he was consequently deprived of the opportunity to obtain an expert to rebut such an opinion. The trial court denied the motion for mistrial, because (1) the jury had already been instructed that questions were not evidence and (2) the expert had not rendered an opinion in response to the Commonwealth's question. *See* N.T., 9/19/2018, at 98-99. However, the trial court granted Appellant's objection, had the jury removed from the courtroom, and informed Dr. Rambaran that he should not answer the Commonwealth's question or otherwise address whether Victim's injuries were self-inflicted and must confine his testimony to his initial and supplemental reports as written. *Id.* at 101-105. When the jury returned to the courtroom, the trial court gave the following instruction:

> Ladies and gentlemen of the jury, there was an objection that was made by [Appellant's counsel] as to the last question and I sustained that last [objection]. That question will be stricken from the record and you are not to consider that question as we go forward, either during this testimony or during your deliberations.
>
> As I told you in the beginning of this case, questions are just questions. They are not evidence, nor are they to [imply] that

there is evidence of [what is asked]. So, I am giving you this cautionary instruction. As I told you before, questions are not evidence. Arguments of counsel are not evidence.

*Id.* at 107-08.

When Dr. Rambaran's testimony resumed, "he detailed that [Victim] presented with a weakened pulse and in shock due to significant blood loss." Trial Ct. Op., filed July 8, 2019, at 48 (citing N.T., 9/19/2018, at 112-13). The doctor stated that Victim sustained two collapsed lungs: "the right-side lung collapse occurred as a direct result of the stab wound to her chest and . . . the left-side lung collapse resulted from a severely broken rib." *Id.* (citing N.T., 9/19/2018, at 128-29). "He also indicated that [Victim] sustained multiple forceful blows to the face, back, chest and head." *Id.* (citing N.T., 9/19/2018, at 147).

> Dr. Ryan Rambaran also testified as to his review of [Victim]'s medical records relative to her hospital visit September 19, 2016. He detailed the injuries she sustained, which were numerous, and he opined that they were consistent with her version of events as to what occurred September 18, 2016.

*Id.* at 52 (citing N.T., 9/19/2018, at 150-53).

On direct examination, the Commonwealth asked Detective Edward McIntyre of the Scranton Police Department to "describe efforts made to locate" Appellant. N.T., 9/19/2018, at 174. As part of his answer, Detective McIntyre mentioned that Appellant had been "involved in incidents of this nature in the past[.]" *Id.* Appellant again promptly objected and moved for a mistrial on the basis that the Commonwealth was impermissibly introducing

evidence of prior bad acts without notice to the defense in violation of Pa.R.E. 404(b); the trial court denied Appellant's motion. *Id.* at 174-77.

The Commonwealth later asked Detective McIntyre whether he "recall[ed Victim] appearing at a preliminary hearing and testifying?" *Id.* at 191. The detective answered affirmatively. *Id.* His testimony continued:

> Q. So, did you learn something in a preliminary hearing that caused you to do some additional investigation?
>
> A. Yes. She testified at the preliminary hearing that she had text messages on her phone. The day prior to the assault, she reported in the preliminary hearing that her and [Appellant] were together, and she was worried about his well-being. She texted her mother that she couldn't leave him alone because she was worried he may injur[e] himself. . . . [L]ater that day, when the preliminary hearing was over, I requested her to make an appointment to come to police headquarters and bring her phone. And I had the crime scene detective photograph those text messages. . . .
>
> [Q. Y]ou had an opportunity to review those text messages?
>
> A. Yes, sir.
>
> Q. Was that consistent or inconsistent with what she told the District Magistrate, at the time?
>
> A. It was consistent.
>
> [APPELLANT'S COUNSEL]: Objection. He's not here to judge the testimony of a witness –
>
> THE COURT: Well, he asked if it was consistent or inconsistent, so I'm going to overrule your objection.
>
> MR. MCINTYRE: They would appear consistent to me, sir.

*Id.* at 191-93; *see also* Trial Ct. Op., filed July 8, 2019, at 32-33.

During closing argument, the Commonwealth discussed inconsistencies between Victim's and Appellant's respective versions of events. At the

conclusion of the Commonwealth's closing, Appellant requested a mistrial for a third time, which the trial court denied.

During the final jury charge, the trial court instructed it, *inter alia*, "that arguments of counsel are not evidence and that no adverse inference should be drawn from Appellant's refusal to testify." Trial Ct. Op., filed July 8, 2019, at 23 (citing N.T., 9/20/2019, at 122, 146-47).

On September 20, 2018, Appellant was convicted of the aforementioned charges. On December 3, 2018, Appellant was sentenced to 20 to 40 years of confinement for criminal attempt to commit murder and a consecutive one to two years of confinement for simple assault graded as a misdemeanor of the second degree, with no further penalty on the remaining counts, for an aggregate judgment of sentence of 21 to 42 years of confinement. On December 31, 2018, Appellant filed this timely direct appeal.[3]

Appellant presents the following issues for our review:

1. Whether the trial court abused its discretion in failing to issue a mistrial and/or proper instruction after the Commonwealth, during closing argument, improperly made comment on Appellant's "testimony" thereby drawing attention to his choice not to testify which was improper and ultimately violated his rights under both the United States Constitution and the Pennsylvania Constitution?

2. Whether the trial court abused its discretion in failing to grant a mistrial and/or proper instruction after the Commonwealth intentionally elicited testimony regarding Appellant's past criminal

---

[3] Appellant filed his statement of errors complained of on appeal on May 13, 2019. The trial court entered its opinion on July 8, 2019.

history and that he had a propensity to commit such crimes which caused prejudice and denied him a fair trial?

3. Whether the trial court abused its discretion in failing to grant a mistrial after the prosecution asked its medical expert an improper question which resulted in the trial court directing a remedy which prejudiced the Appellant since the remedy prohibited or limited his ability to carry on his defense strategy and theory?

4. Whether the trial court abused its discretion in overruling Appellant's objection to Detective McIntyre opinion regarding the veracity of Victim's prior testimony which amounted to impermissible bolstering and otherwise violated Pa.R.E. 701[4]?

Appellant's Brief at 3 (suggested answers omitted).

Appellant first contends that the trial court abused its discretion by failing to issue a mistrial "after the Commonwealth, during closing argument, improperly made comment on Appellant's 'testimony' thereby drawing attention to his choice not to testify which was improper and ultimately violated his rights under both the United States Constitution and the Pennsylvania Constitution[.]" Appellant's Brief at 11. In the alternative,

---

4   If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Appellant argues that the trial court should have issued a "proper instruction" after the Commonwealth's comment during closing argument. *Id.*

"We review the trial court's decision to deny a mistrial for an abuse of discretion." *Commonwealth v. Bedford*, 50 A.3d 707, 712 (Pa. Super. 2012) (*en banc*).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Andrew J. Jarbola III, we conclude Appellant's first appellate claim merits no relief. We agree with the trial court that "no unequivocal call of attention to Appellant's decision not to testify at trial occurred in violation of his Fifth Amendment right." Trial Ct. Op., filed July 8, 2019, at 24 (citing *Commonwealth v. Randall*, 758 A.2d 669, 681 (Pa. Super. 2000) (prosecution's comments "are improper only if they unequivocally call attention to the defendant's failure to testify"). Additionally, contrary to Appellant's contention, the trial court issued a "proper instruction" during the final jury charge directing the jury that "no adverse inference should be drawn from Appellant's refusal to testify." *Id.* at 23 (citation omitted). "It is well settled that the jury is presumed to follow the trial court's instructions." *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016).

Next, Appellant urges this Court to conclude that "the trial court abused its discretion in failing to grant a mistrial and/or proper instruction after the Commonwealth intentionally elicited testimony regarding Appellant's past

criminal history and that he had a propensity to commit such crimes which caused prejudice and denied him a fair trial[.]"  Appellant's Brief at 17.

Our standards of review for a trial court's decision to deny a mistrial remains an abuse of discretion.  *Bedford*, 50 A.3d at 712.  "[O]ur standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law."  *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted).

"Not all references which may indicate prior criminal activity require reversal.  Mere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference." *Commonwealth v. Montalvo*, 986 A.2d 84, 97 (Pa. 2009) (citation omitted).

> When the statement at issue relates to a reference to past criminal behavior, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required.  A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial.  *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972).

*Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008) (internal brackets and quotation marks and some internal citations omitted).

Again, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of Judge Jarbola, we conclude Appellant's second appellate issue merits no relief.  The trial court opinion comprehensively discusses and properly disposes of that question:

Detective McIntyre's reference to prior criminal activity on [Appellant]'s part was not only brief but also ambiguous and unintentionally elicited by the prosecutor. In fact, the Commonwealth's withdrawal of its Pa.R.E. 404(b) motion bolsters the conclusion that the offending testimony in this case was inadvertently elicited. Thus, the [trial c]ourt submits that it properly denied [Appellant]'s motion for mistrial on the instant grounds.

Trial Ct. Op., filed July 8, 2019, at 27.

For his third appellate challenge, Appellant maintains that –

the trial court abused its discretion in failing to grant a mistrial after the prosecution asked its medical expert an improper question which resulted in the trial court directing a remedy which prejudiced the Appellant since the remedy prohibited or limited his ability to carry on his defense strategy and theory . . . that Victim's wounds were self-inflicted.

Appellant's Brief at 27-28.

Our standard of review for the trial court's decision to deny a mistrial remains an abuse of discretion. *Bedford*, 50 A.3d at 712. Additionally, "[a] mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice." *Id.* at 713.

In the current action, the trial court told the jurors that the Commonwealth's question to Dr. Rambaran about whether Victim's injuries were self-inflicted was stricken from the record and cautioned them that the questions and arguments of counsel were not evidence. N.T., 9/19/2019, at 107-08. The trial court reiterated the instruction "that arguments of counsel are not evidence" during its final jury charge. Trial Ct. Op., filed July 8, 2019, at 23 (citing N.T., 9/20/2019, at 122). These cautionary instructions were sufficient to overcome any potential prejudice, *Bedford*, 50 A.3d at 713, and,

again, "[i]t is well settled that the jury is presumed to follow the trial court's instructions." **Cash**, 137 A.3d at 1280. Accordingly, the trial court did not abuse its discretion by denying Appellant's request for a mistrial. **Bedford**, 50 A.3d at 712.[5]

Finally, Appellant insists that "the trial court abused its discretion in overruling Appellant's objection to Detective McIntyre's opinion regarding the veracity of Victim's prior testimony which amounted to impermissible bolstering[6] and otherwise violated Pa.R.E. 701[.]" Appellant's Brief at 34. Appellant continues that "the trial court authorized the Commonwealth's witness to give an opinion regarding Victim's credibility which was both irrelevant and prejudicial" after it overruled Appellant's objection to the Commonwealth's question as to "whether Victim's testimony was consistent with text messages[.]" **Id.** at 36-37 (citing N.T., 9/19/2018, at 191-93).

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. . . . Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

---

[5] Moreover, even without Dr. Rambaran's opinion as to whether Victim's injuries were self-inflicted, the jury could still conclude from other properly admitted evidence that her injuries were not self-inflicted, as we discuss in more detail below.

[6] "Bolstering" occurs when the Commonwealth "places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the witness's testimony." **Commonwealth v. Reid**, 99 A.3d 427, 447–48 (Pa. 2014).

- 13 -

*Commonwealth v. Clemons*, 200 A.3d 441, 474 (Pa. 2019) (citations omitted). "In addition, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." *Id.* at 462 (citation and internal quotation marks omitted).

The trial court concluded that Detective McIntyre's statement was not bolstering, because he was merely explaining the course of his investigation. Trial Ct. Op., filed July 8, 2019, at 32-34. In doing so, the trial court relies upon *Commonwealth v. Kane*, 10 A.3d 327 (Pa. Super. 2010), and *Commonwealth v. Lam*, 684 A.2d 153 (Pa. Super. 1996).

In *Kane*, 10 A.3d at 333, the Commonwealth asked a testifying detective whether he had "any reason to doubt any of the information" that another Commonwealth witness "gave [him.]" This Court found that this question did not constitute an improper bolstering of the credibility of another witness, because it "did not concern" that witness's "credibility *per se*; rather, **it related to [the detective]'s investigation of this matter** and whether, at the point at which he interviewed [the witness], he had other information or other leads which gave him reason to further investigate."' *Id.* at 334 (emphasis added).

In *Lam*, 684 A.2d at 162, the appellant argued that testimony by a state trooper improperly bolstered the credibility of another Commonwealth witness when the trooper expressed his belief in the witness's veracity at the time of an investigatory interview. This Court held that the trooper's testimony "did not create undue prejudice depriving [the a]ppellant of a fair trial[,]" because

- 14 -

the trooper's remark was part of "**a proper explanation of investigative procedures**" and did not include any comment on the truthfulness of the other witness's testimony at trial. *Id.* (emphasis added).

In the current appeal, Detective McIntyre did not remark on Victim's credibility *per se* but, instead, was explaining the steps taken during his investigation: the consistency between Victim's testimony during the preliminary hearing – not at trial – and the content of her text messages explained why the detective took no further action; if they had been inconsistent, the detective may have needed to pursue further investigation. As the detective's statement related to his investigation of this matter and explained his investigative procedures, his assertion did not constitute improper bolstering. **Kane**, 10 A.3d at 334; **Lam**, 684 A.2d at 162.

Assuming Appellant's objection should have been sustained on the basis that the detective's comment on consistency qualified as improper bolstering, such an error would be harmless.

> The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. **See Commonwealth v. Story**, 476 Pa. 391, 383 A.2d 155 (1978). The proper analysis to be undertaken was thoroughly explained in **Story**:
>
> > This Court has stated that an error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the

defendant's guilt. If "honest, fair minded jurors might very well have brought in not guilty verdicts," an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

We have cautioned that:

"a conclusion that the properly admitted evidence is 'so overwhelming' and the prejudicial effect of the.... error is 'so insignificant' by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly."

Accordingly, we have been reluctant to find an error harmless on the basis of overwhelming evidence.

*Id.* at 412–413, 383 A.2d at 166 [footnote omitted; citations omitted].

***Commonwealth v. Rasheed***, 640 A.2d 896, 898 (Pa. 1994).

The content of the text messages was in no way whatsoever necessary for the Commonwealth to establish the elements of all of the charges related to the incident of September 18, 2016. Assuming *arguendo* that, without Detective McIntyre's comment on the consistency of the text messages with Victim's testimony at the preliminary hearing, the jury would not have believed any of Victim's testimony at trial, the evidence was still sufficient to convict Appellant of those crimes.

Victim "suffered several injuries at Appellant's hand" during the September assault. Trial Ct. Op., filed July 8, 2019, at 52. Officer Davis's testimony established the "bruise on her chin[,]" her swollen right foot, and pain in her rib area. *Id.* at 51 (citing N.T., 9/19/2018, at 44). From his own

- 16 -

observations, he could see that she was crying, upset, and in pain. *Id.* (citing N.T., 9/19/2018, at 44). Dr. Rambaran confirmed Victim's numerous injuries and that, in his medical opinion, they were consistent with her rendition of events on September 18, 2016. *Id.* at 52 (citing N.T., 9/19/2018, at 151-53). The jury also saw photographs of Victim's injuries taken by Officer Davis. *Id.* (citing N.T., 9/19/2018, at 46-47). "In fact, she required medical assistance as a result of them and was observed to appear in pain. As such, there is no doubt that [Victim] suffered bodily injury to her chin, her foot, and her rib area." *Id.* at 52.

Officer Davis testified that Victim identified Appellant as her assailant. *Id.* at 51 (citing N.T., 9/19/2018, at 45). However, again, assuming, for argument's sake, that the jury was incredulous of any statements by Victim, Appellant's subsequent actions could have caused the jury to assume that he was the perpetrator of the assault. As Officer Davis described, Appellant had fled his home and would only speak to the officer briefly on the telephone, confirming that he had left town then hanging up on the officer. *Id.* at 51-52 (citing N.T., 9/19/2018, at 48).

Accordingly, from the testimony of Officer Davis and Dr. Rambaran and the photographs of Victim's injuries, the evidence was sufficient for the jury to convict Appellant of simple assault and harassment for the September incident. Consequently, the properly admitted evidence of guilt for this incident was so overwhelming that any allegedly prejudicial effect of Detective

McIntyre's comment on the consistency between Victim's preliminary hearing testimony and her text messages was so insignificant by comparison that it is clear beyond a reasonable doubt that the detective's remark could not have contributed to these verdicts. *See Rasheed*, 640 A.2d at 898.

The text messages themselves were only relevant to establish that Appellant and Victim were together on October 20, 2016. This fact is only germane to contradict Appellant's theory that Victim's injuries were self-inflicted. *See* N.T., 9/17/2018, at 57. Nevertheless, even without the messages or Victim's testimony, the jury still would have concluded from Dr. Rambaran's testimony that Victim's injuries were not self-inflicted. Dr. Rambaran testified that Victim suffered injuries on her face and chest, as well as on her back; the jury could have logically inferred that it would be impossible for a person to inflict injuries on herself from both the front and the back. Trial Ct. Op., filed July 8, 2019, at 48 (citing N.T., 9/19/2018, at 128-29, 147). Furthermore, given Dr. Rambaran's testimony about the severity of Victim's injuries, including shock, significant blood loss, a weakened pulse, and two punctured and collapsed lungs, the jury could have reasonably found that an individual with any of those injuries would have lacked the strength to continue to harm herself. *Id.* (citing N.T., 9/19/2018, at 112-13, 128-29). Ergo, the jury would have rejected Appellant's theory of self-inflicted injuries from Dr. Rambaran's untainted evidence alone,

considered independently of the allegedly tainted evidence of the text messages and Victim's testimony. ***See Rasheed***, 640 A.2d at 898.

Moreover, Detective Castellano's and Tanczos's testimony, when considered in combination, confirmed that Appellant's DNA had been found on a sweatshirt at the crime scene. N.T., 9/18/2018, at 91-92; N.T., 9/19/2018, at 74. The presence of Victim's DNA in a bloodstain on the same shirt established that Appellant was present when Victim was injured. Having concluded from Dr. Rambaran's testimony that Victim's injuries were not self-inflicted, combined with the evidence of Appellant's presence at the crime scene and at a time when Victim was bleeding, the jury would have logically inferred that Appellant was the perpetrator of the October incident. Thus, assuming for the sake of argument that Detective McIntyre's comment on the consistency between Victim's preliminary hearing testimony and the text messages were improper bolstering, any effect said bolstering had on Victim's credibility in the eyes of the jury was ultimately harmless. The properly admitted evidence from Detective Castellano, Dr. Rambaran, and Tanczos overwhelmingly established Appellant's guilt of the October incident, any prejudicial effect of that brief bolstering was insignificant by comparison and could not have contributed to the verdict. ***See Rasheed***, 640 A.2d at 898.

Based on the foregoing, Appellant is not entitled to relief on any of his challenges on appeal. Hence, we affirm the judgment of sentence.

Judgment of sentence affirmed.

- 19 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2020