J-S21004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JORGE PARAMO MORA, | |
| Appellant | No. 2478 EDA 2015 |

Appeal from the Judgment of Sentence March 26, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s):
CP-15-CR-0001850-2013
CP-15-CR-0003592-2013
CP-15-CR-0003856-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 23, 2016**

Appellant, Jorge Paramo Mora, appeals from the judgment of sentence of an aggregate term of 8½-18 years' incarceration, following his conviction in three separate cases, of kidnapping, simple assault, obstruction of justice, terroristic threats, and two counts each of unlawful restraint and witness intimidation.  After careful review, we affirm in part and reverse in part.

Briefly, Appellant's consolidated trial concerned the following events:

[Appellant]'s convictions stem from his conduct in traveling from his residence in Georgia to the State of Pennsylvania, specifically, to New Garden Township, Chester County, Pennsylvania[,] to abduct the mother of his child and her sister on September 16, 2012.  While he dropped the sister off on the

---

[*] Former Justice specially assigned to the Superior Court.

side of a highway in Chester County, he kept the mother of his child, victim Guillermina Nayeli Lopez, locked in his Escalade and absconded with her and his minor son, whom Ms. Lopez had brought with her to Pennsylvania, back to Georgia, where he was promptly apprehended by authorities and charged with the instant offenses. The Intimidation of Witnesses or Victims and the Obstructing Administration of Law or Other Governmental Function charges stem from his course of conduct in subsequently sending, while incarcerated pre-trial on the Kidnapping and related offenses discussed above, two sets of multiple threatening letters to Ms. Lopez, alternately detailing the revenge he planned to exact upon her for her role in his pretrial incarceration and criminal charges and urging her in arguably more conciliatory tones to alter her testimony in court so as to exonerate him.

Trial Court Opinion (Denying Appellant's Post-Sentence Motion) (hereinafter "TCO"), 7/23/15, at 2.

At lower court docket number 3856-12, Appellant was charged with kidnapping, 18 Pa.C.S. § 2901(a)(3); unlawful restraint, 18 Pa.C.S. § 2902(a)(1); two counts of false imprisonment, 18 Pa.C.S. § 2903; and simple assault, 18 Pa.C.S. § 2701(a)(1). At lower court docket number 3592-13, Appellant was charged with intimidation of witnesses or victims, 18 Pa.C.S. § 4952(a)(2); and obstructing administration of law or other governmental function (obstruction of justice), 18 Pa.C.S. § 5101. At lower court docket number 1850-13, Appellant was charged with intimidation of witnesses or victims, 18 Pa.C.S. § 4592(a)(3); and terroristic threats, 18 Pa.C.S. § 2706(a)(1). Appellant sought to sever these charges by docket number in a pretrial motion filed on July 16, 2014. The trial court denied that motion on August 5, 2014. Following a jury trial, held on November 3-5, 2014, Appellant was convicted of the above-listed charges, while "[a]ll

other charges" not mentioned "were either withdrawn or resulted in an acquittal." TCO at 2.

On March 26, 2015, the trial court sentenced Appellant to an aggregate term of 8½-18 years' incarceration. Appellant hired new counsel for sentencing and post-sentencing matters. A post-sentence motion was filed on April 9, 2015, raising multiple claims of trial court error, and asserting multiple ineffective assistance of counsel (IAC) claims. The Commonwealth filed a motion seeking to defer litigation of Appellant's IAC claims until collateral review. The trial court granted that motion by order dated April 22, 2015. Although a post-sentence motion hearing was held on May 7, 2015, neither party presented additional evidence. Appellant's post-sentence motions were subsequently denied in an opinion and order dated July 23, 2015.

On August 12, 2015, Appellant filed a timely notice of appeal. Appellant then filed an untimely, court-ordered Pa.R.A.P. 1925(b) statement on September 11, 2015.[1] On September 14, 2015, Appellant filed a *nunc pro tunc* motion for an extension of time to file his Rule 1925(b) statement. The trial court granted that motion the next day. The trial court issued its Rule 1925(a) opinion on September 16, 2015. *See* Opinion Sur Rule 1925(a), 9/16/15, at 1-7. Therein, the trial court largely incorporated its

_____

[1] Appellant's Rule 1925(b) statement was due on Tuesday, September 8, 2015.

July 23, 2015 opinion to address the matters raised in Appellant's Rule 1925(b) statement. *Id.* at 3. However, the court's Rule 1925(a) opinion did address a single issue not raised in Appellant's post-sentence motion. *Id.* at 3-7 (concerning Appellant's claim that the trial court erred by not declaring a mistrial *sua sponte* regarding the jury's exposure to evidence concerning Appellant's pre-trial incarceration).

Appellant only presents a single question for our review, "Whether the trial court erred in denying and dismissing Appellant's post[-]trial motion?" Appellant's Brief, at 5 (unnecessary capitalization omitted). However, it is apparent that Appellant presents eight claims, and the argument section of his brief is subdivided to address those distinct arguments. These separate claims are as follows:

> 1. The evidence was insufficient as a matter of law to establish Appellant's guilt beyond a reasonable doubt on the Kidnapping and Unlawful Restraint charges Counts I and IV of Term No. 3856-12.
>
> …
>
> 2. The evidence was insufficient as a matter of law to establish Appellant's guilt beyond a reasonable doubt on the Intimidation of Witnesses or Victims and Obstructing Administration of Law or Other Governmental Function of Term No. 3592-13.
>
> …
>
> 3. The jury verdict was against the weight of the evidence on the Kidnapping and Unlawful Restraint charges of Term No. 3856-12.
>
> …
>
> 4. The jury verdict was against the weight of the evidence on the Intimidation of Witnesses and Obstructing Administration

- 4 -

of Law or Other Governmental [Function] charges of Term No. 1850-13.

…

5. The Trial Court erred in denying Appellant's Motion to sever … Appellant's three pending criminal matters.

…

6. The Trial Court's vague instruction to the jury following Officer Codwright's testimony regarding Appellant's pre-trial incarceration did not purge the prejudice caused by the unnecessary disclosure.

…

7. The Trial Court erred in permitting testimony by Ms. Lopez about unauthenticated text messages.

…

8. The Trial Court erred in permitting the prosecutor[] to ask leading questions to Ms. Lopez on the basis that there was a "language barrier."

Appellant's Brief, at 11-35.

1.

Appellant's first two claims concern the sufficiency of the evidence supporting his convictions for kidnapping, unlawful restraint, obstructing justice, and intimidating witnesses. As a preliminary matter, the Commonwealth contends that these claims have been waived because, in Appellant's Rule 1925(b) statement, he failed to specify which elements of these crimes that the Commonwealth failed to prove by sufficient evidence. Commonwealth's Brief, at 9.

We could find Appellant's sufficiency claims waived due to the vagueness in his Rule 1925(b) statement. "[A] [Rule 1925(b)] [s]tatement which is too vague to allow the court to identify the issues raised on appeal

is the functional equivalent of no Concise Statement at all." ***Commonwealth v. Dowling***, 778 A.2d 683, 686-87 (Pa. Super. 2001). "Even if the trial court correctly guesses the issues Appellant raises on appeal and writes an opinion pursuant to that supposition, the issue is still waived." ***Commonwealth v. Heggins***, 809 A.2d 908, 911 (Pa. Super. 2002).

Nevertheless, we decline to find Appellant's sufficiency claims waived in the narrow circumstances of this case because the nature of those issues are clear from the record. Appellant filed comprehensive post-sentence motions in which he specifically identified the elements which he believed were not sufficiently proven by the Commonwealth, and the trial court issued an opinion addressing those sufficiency claims which was directly incorporated into the trial court's Rule 1925(a) opinion. Appellant's Rule 1925(b) statement, although vague as to the elements under challenge, clearly frames the sufficiency issues as a challenge to the trial court's dismissal, in its post-sentence motion opinion, of specifically raised sufficiency claims. Thus, neither the trial court's review of Appellant's sufficiency claims, nor our own review of those claims, is hindered by Appellant's vague statement of those issues in his Rule 1925(b) statement.[2]

_____

[2] However, to the extent that Appellant's sufficiency arguments deviate from those presented in his post-sentence motions, we will deem such matters waived.

We now turn to the merits of Appellant's sufficiency claims. Our standard of review of such claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant first claims that the evidence was insufficient to support his conviction for kidnapping under 18 Pa.C.S. § 2901(a)(3).

> [A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
>
> > (1) To hold for ransom or reward, or as a shield or hostage.
> >
> > (2) To facilitate commission of any felony or flight thereafter.
> >
> > ***(3) To inflict bodily injury on or to terrorize the victim or another.***
> >
> > (4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S. § 2901(a) (emphasis added).

- 7 -

Appellant concedes, for purposes of this appeal, that the victim, Ms. Lopez, was unlawfully removed with the intent to inflict bodily injury. ***See*** Appellant's Brief, at 12-13 ("In the instant case, the Commonwealth successfully argued that Appellant transported Ms. Lopez, from Chester County, Pennsylvania to Georgia, intending to cause bodily injury to her."). However, Appellant contends that the victim was "a willing participant for most of the trip." ***Id.*** at 13. On this basis, Appellant argues that Ms. Lopez was not transported "a substantial distance[,]" nor confined "for a substantial period[,]" within the meaning of the kidnapping statute. He argues:

> The Commonwealth's evidence was top heavy on the events from the point when she voluntarily entered Appellant's Escalade to the point where her sister is dropped off on Route 1, which support the element of an "unlawful detention" for that brief period. Ms. Lopez testified that she could not open the door and that Appellant pulled her hair when she tried to exit the car with her sister. All those events happened shortly after the two women entered the Escalade. The distance between the McDonald's and the point of Route 1 where Ms. Lopez's sister was dropped off was minimal and insufficient to be considered a "substantial distance." The evidence showed that, beyond the initial interaction between Appellant and Ms. Lopez, there was no testimony that, even in Pennsylvania, and, for the majority [of] the trip to Georgia, Ms. Lopez was held against her will. To the contrary, Ms. Lopez testified that Appellant did not do anything to physically stop her from exiting the car…; during the lengthy trip, the group stopped for gas and to use the facilities; they slept at a motel in South Carolina, and Ms. Lopez was able to phone her Mother at least four separate times and advised her of her whereabouts.
>
> The Trial Court rejects Appellant's argument that Ms. Lopez and her sister entered the car "voluntarily." [TCO, at] 42. From her actions on September 15, 2012, the day before the

incident, and her actions on September 16, 2012, one can only surmise that Ms. Lopez freely elected to enter Appellant's … car on September 16th. Ms. Lopez testified that, on September 15th, Appellant unexpectedly appeared at her home and requested that she and their Child go to the store with him. Ms. Lopez declined. Appellant took no action to force her into his vehicle or harm her in any way. The very next day, Appellant and Ms. Lopez met at a McDonald's. Once more, Appellant requested that Ms. Lopez and their Child go shopping with him and she agreed. There was no testimony that Appellant in any way forced Ms. Lopez into the vehicle. Interestingly, despite Ms. Lopez's claims that Appellant texted her in June of 2012, with threats of violence against her and her family, and the alleged history of abuse in their relationship, she did not call the police on September 15th or September 16th to report Appellant's arrival in Chester County. On September 16th Ms. Lopez and her sister both had cellular telephones at their disposal and they were in a public place where they could have easily alerted others of their imminent danger. Neither did, and, instead, elected to voluntarily enter Appellant's car.

Appellant's Brief, at 13-14 (citations to trial transcripts omitted).

In defiance of our standard of review, Appellant relies on favorable facts and inferences from the record, while he omits a non-trivial number of unfavorable facts. In some instances, Appellant even asserts certain facts which are directly contradicted by the record. Contrary to Appellant's summary of the evidence, the trial court found:

[Appellant] abducted Ms. Lopez by false pretenses, claiming that he wished only to go shopping with her and their son. After she entered the vehicle, he locked the doors, which Ms. Lopez testified could only be opened from the outside, and drove her, not to a shopping center, but to pick up two of his friends. Once the friends entered the vehicle, [Appellant] jumped in the back seat with the victim and her sister and [Appellant] began yelling at and threatening the victim, hitting her and choking her with his hand. She had bruising around her neck which was visible the next day when police took photographs of her for investigative purposes. She testified that she had trouble breathing while he was choking her, thus meeting the

"impairment of physical condition" element of bodily injury. He grabbed her by the hair and pulled when she tried to leave his vehicle when [Appellant] stopped to kick her sister out of the car on the side of Route 1 in Chester County, Pennsylvania. She testified it hurt when he did this. She also testified that she was afraid for her life while she was in the car with [Appellant]. Her testimony is sufficient to establish the elements of Kidnapping, as it demonstrates that [Appellant] unlawfully, by deception followed with force and threats, removed Ms. Lopez a substantial distance under the circumstances from the place where she was found with the intent to cause bodily injury to Ms. Lopez, as demonstrated by her testimony that he choked her hard enough to cause her to have trouble breathing and to leave marks on her neck that were visible into the next day, as well as with the intent to terrorize Ms. Lopez.

TCO, at 15-16 (citations to trial transcripts omitted).

Addressing Appellant's specific argument, the trial court stated:

We reject [Appellant]'s theory because, whether the evidence is viewed in the light most favorable to the Commonwealth or not, the reasonable inference from [Appellant]'s conduct in locking the car doors, buoying his power against the victim by picking up friends who were willing to employ themselves to his purposes, threatening, hitting, and choking the victim, and pulling her hair to stop her from leaving his vehicle, all in front of the couple's then-five (5) or six (6) year-old son, isolating the victim from her sister, her family, her friends, and all that was familiar to her, and transporting her to Georgia[,] is that Ms. Lopez did not at any time consent to the trip that [Appellant] had planned for her. It is counterintuitive to suggest that, after being isolated from her sister, friends, family and home, locked in the car, physically abused, choked, yelled at and threatened, the fact that Ms. Lopez may have stopped physically resisting at some point transitioned the trip into a consensual joyride or "frolic and detour" for her. The following colloquy between the prosecutor and Ms. Lopez during trial supports this conclusion.

[BY THE PROSECUTOR:]

Q. Did the [Appellant] ever say anything to you about what would happen if you tried not to go back to Georgia with him?

A. He said he was going to kill me.

Q. Let me back up a second. All the way from Pennsylvania to Georgia, why didn't you try to do something to get away?

A. I couldn't.

Q. Why do you say that?

A. I couldn't open the doors.

Q. Were you afraid of the [Appellant]?

A. Yes.

Q. Were you afraid of what would happen if you tried to get away?

A. Yes.

Q. What were you afraid of?

A. That he would take the child away.

Q. Were you afraid of him doing anything to you?

A. Yes.

Q. What were you afraid of?

A. That he might kill me.

[N.T.], 11/3/14, [at] 56-58.

Furthermore, it is evident from the record that Ms. Lopez was concerned for the safety and well-being of her son. [Appellant] had both of them in his custody. Ms. Lopez testified that [Appellant]'s physical possession and confinement of the child in his Escalade prevented her from alerting others to her predicament when the party stopped for bathroom breaks along the way, breaks on which, we note, she was always accompanied to, and guarded outside of, the restroom by members of [Appellant]'s retinue. Not only was she supervised on these breaks, preventing her from having meaningful concourse with others who might have helped her, she was loathe to abandon her son to the [Appellant]'s care, a not unwise or unreasonable position given [Appellant]'s abusive and controlling disposition that day. [Appellant] manipulated Ms.

Lopez in every way possible to accomplish the abduction. He terrorized her physically and psychologically, both directly upon her person and indirectly through her fears for what might happen to her son. It is reasonable to conclude that the terror did not abate when they crossed the Pennsylvania border. On these facts we reject any suggestion that Ms. Lopez'[s] failure to leave [Appellant]'s company at any time made her presence on the trip to Georgia consensual in any way, shape or form.

TCO, at 18-20 (some citations to the trial transcripts omitted).

We agree with the trial court. Viewed in a light most favorable to the Commonwealth, there was ample evidence demonstrating that Ms. Lopez was held and transported against her will, over a substantial distance, and for a substantial period of time. Thus, Appellant's kidnapping-related sufficiency claim lacks merit.

Appellant also challenges the sufficiency of the evidence supporting his conviction for unlawful restraint under 18 Pa.C.S. § 2902(a)(1). Unlawful restraint occurs when a person "restrains another unlawfully in circumstances exposing him [or her] to risk of serious bodily injury[.]" 18 Pa.C.S. § 2902(a)(1). For purposes of this argument, Appellant concedes that Ms. Lopez was unlawfully restrained, but contends that the evidence did not support a finding that she suffered, or was at risk of, serious bodily injury. "Serious bodily injury" is defined in the Crimes Code as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

This claim is belied by the evidence, which demonstrated that, at one point during the kidnapping, Appellant choked Ms. Lopez "so hard that she had trouble breathing." TCO, at 22 (citing N.T., 11/3/14, at 53; and N.T., 11/5/14, at 113). Nevertheless, Appellant argues that this evidence of choking was insufficient because "[t]he only evidence of an 'injury' to Ms. Lopez was a faint red mark on her neck." Appellant's Brief, at 16. Appellant understates and/or misconstrues the facts adduced at trial. The marks left on Ms. Lopez's neck may have been the only physical evidence of injury; however, that evidence corroborated Ms. Lopez's testimony that she had been choked to the point where her breathing was impaired. Ms. Lopez's testimony, alone, was sufficient to establish that Appellant risked causing serious bodily injury to her. *See generally Commonwealth v. Russell*, 460 A.2d 316 (Pa. Super. 1983) (indicating that choking the victim, among other circumstances, demonstrated an attempt to inflict serious bodily injury).[3]

Choking a victim to the point of impeding their respiration inherently risks causing that person serious bodily injury, because common sense dictates that a person who cannot breathe will die within a relatively short

---

[3] We are aware that there were circumstances in *Russell*, other than choking, which also gave rise to the risk of serious bodily injury in that case (specifically, the victim had been threatened with rape). However, we have no doubt whatsoever that choking a victim, coupled with evidence that the victim's breathing was actually impeded, without more, constitutes a risk of serious bodily injury.

period of time. We reject any implicit suggestion by Appellant that his failure to choke Ms. Lopez to the point of unconsciousness or death reflects that there was no serious bodily injury risked by that criminal act. Moreover, evidence that the victim lacked more serious exterior wounds is not very probative of the risks presented by the act of choking. Accordingly, we conclude that this claim also lacks merit.

2.

Next, Appellant contends that the evidence was insufficient to sustain his conviction for intimidation of witnesses or victims pursuant to 18 Pa.C.S. § 4952(a)(2) at lower court docket number 3592-13. That provision provides as follows:

> **(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> …
>
> (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

18 Pa.C.S. § 4952(a)(2).

Appellant confines his argument to whether there was sufficient evidence that he utilized intimidation as a tactic to convince Ms. Lopez to give false testimony. Specifically, Appellant references two letters which he wrote to Ms. Lopez from prison, dated September 5, 2013 and September 10, 2013, in which he attempted to induce Ms. Lopez to tell the court that he

- 14 -

had not kidnapped her. *See* Trial Court Exhibit C-7. Appellant contends that nothing in those letters could reasonably be interpreted as a threat. Regarding those two letters in isolation, we agree with Appellant that these letters cannot reasonably be interpreted as a threat or similar form of intimidation.

However, the trial court indicates that when these letters are considered in the context of others written by Appellant to Ms. Lopez a year earlier, it becomes clear that Appellant's solicitation of false testimony was accompanied by threatening undertones. During September and October of 2012, immediately following his arrest for the kidnapping-related offenses, Appellant wrote a series of letters to Ms. Lopez in which he repeatedly threatened her and others close to her with violent consequences if she did not leave her boyfriend. *See* Trial Exhibits C-1, C-2, C-4, and C-5.

> In the first letter, Appellant threatened Ms. Lopez's boyfriend:
>
> Tell that damn faggot boyfriend, piece of shit that I am coming for him. Even though I don't know nothing about you, when I get out I already sent something to be done to him and I will continue with you and I know you believe me, you know what I am capable of and if you don't believe it, just wait so you can see it will be the last ass kicking.

TCO, at 28 (quoting C-1, as translated from Spanish, emphasis omitted).

> Then Appellant shifted his rage toward Ms. Lopez:
>
> If you don't return, go to hell you son of a bitch. Damn bitch in heat, whore. Daughter of fucking 30,000 whores. I am pissed because of you. I am here because of your damn heat. You will see what I am capable of, I have planned it out. … You destroyed my heart and now I'm going to ruin all your life. … If

you knew the hatred I feel you would tremble.  All of you would tremble because I am coming back.

*Id.* (emphasis omitted).

In the second letter, Appellant told Ms. Lopez that he is "capable of selling [his] soul to the devil."  TCO, at 30 (quoting C-2, as translated from Spanish).  He also threatened both Ms. Lopez and her boyfriend again:

> It doesn't matter to me if I spend years in prison.  It doesn't matter to me if I don't have the one I want.  My fucking life doesn't matter to me if it was already stepped on but that dog won't escape me, I swear to you that he will not escape me and you know my vows aren't lies.  … Leave that asshole, you are mine, whether you like it or not.  If you don't return to me and you continue seeing that god for nothing.  I am thinking, I have lots of time and hatred.  I want to hear you and my son will not be denied me, I am capable of everything for him.

*Id.* at 28-29 (emphasis omitted).

Exhibit C-4,[4] a letter dated October 4, 2012, from Appellant to Ms. Lopez, contains these particularly disturbing threats:

> Do you think I am not angry you give your ass to that son of a bitch?  I will have him pay for it, I swear on my mother, I will have you pay and if you don't want to answer me, go ahead and fuck yourself.  Fuck your mother for everything and I will tell you, if I am 6 months in here something will happen.  If I am in here a year two things will happen. If I am here more than a year three things and if you show up in court and they throw me to Mexico without my papers, I swear on my mother that I will come for all of you and I will take all of you.  On my life I promise you, all of you, all of you, all of you.  I will take you all the way to Mexico and there is where all of you will see, when I will do what I'm thinking of doing.  One by one or more like what will be done to the ladies and all of you will see when they are

---

[4] Exhibit C-3 is a brief, apologetic letter that does not appear to contain any threats.

raping them in front of everyone. You show up in court and throw dirt on me, they take my papers, mami and I am some time in jail but they will throw me to Mexico and angry like I am, I have people, a friend of mine in prison is getting out in a week. He says that he has a machine that cuts up tree branches and he says that the pieces come out really small. This isn't a threat but if you fuck me over, I will fuck you over. Answer me, this is the last chance. You fuck me over, I fuck you over.

*Id.* at 31 (quoting C-4, as translated from Spanish, emphasis omitted).

Exhibit C-5 was written on the same day as C-4, and while it does not appear as threatening as the previous letters, it references previously made threats while pleading with Ms. Lopez to not show up to court:

A comrade that I met here has the same problem as me and told me that if present … yourself in court on Thursday, the judge is going to ask you question and you will have to answer them. but … if you don't present yourself nothing will happen, nothing will happen to you and nothing will happen to me. He says that everything happened with him the same as what happened between you and me and his wife presented herself at the first court hearing and later at the second hearing she didn't. He says that all the bad that happened was because she showed up at the first because everything is recorded. He says that if she hadn't showed up, nothing would have happened. Now he will be staying sometime in prison and after that he needs to go to Mexico. I hope not to see you there, mami help me. Do you want that to happen to me? I know you are upset with me but my intent was never to do anything bad to you. You know I only did it to see if we could have another chance. I am truly sorry, please help me. I don't want to lose my papers and my liberty, please help me. Do it for the boy. I love the two of you.

Please, please, I still lover … all of my family, like before. I only get mad sometimes but you know I am not that bad. I am sorry, forgive me. I need help. I need you not to show up at the first court. If you don't go, police will come looking for you. Or call you by phone and they will give you a paper for another court or will say to you why you didn't go and you only say to them that you don't want to press charges against me, you only want the order for me not to go near you. You won't have any problems, nothing will happen to you, you can go ask just to be

sure but if you show up you will put me in jail for a good amount of time. Is that what you want? Tell me, is that what you want? I am just ask for your forgiveness and think about it and I will leave you alone. Just don't leave me here. Please don't show up. Tell Loana not to show up. Don't leave me here. I am sorry, tell her I am sorry. I no longer want to be here help me don't go, please.

... Just don't go, you won't have any problems, I swear. But I no longer want to be here. Ask someone that if you don't go to the first they will send you papers for the other one and you just need the 2 courts to go by and after when they ask you just tell them that you don't want to press charges that you only want the order in place and that only leaves me in jail for a month or two and then later they will let me out. I promise on my knees, I beg your forgiveness on my knees but don't go to court. Just ask, nothing will happen to you. Think about it.

*Id.* at 32-33 (quoting C-5, as translated from Spanish, emphasis omitted).

We agree with the trial court that, when considered in the context of the letters Appellant wrote to Ms. Lopez in the fall of 2012, his 2013 letters provide the jury with a sufficient basis to conclude that Appellant sought to intimidate Ms. Lopez into giving false testimony. In response to the trial court's conclusion, Appellant baldly asserts that the jury "was unable to separate the harsh and inflammatory content of the 2012 letters…." Appellant's Brief, at 20. However, Appellant cites no legal authority which suggests that it was improper for the jury to consider the 2012 letters in conjunction with the witness intimidation offense. The 2012 letters demonstrate that the 2013 letters were written during a time when Ms. Lopez was already under threat from Appellant, and Appellant cites no authority that suggests that there must be an immediate temporal

relationship between the intimidation element of Section 4952 and the solicitation to give false or misleading testimony.

Indeed, even if the 2012 letters were not *admissible* for purposes of considering whether the 2013 letters constituted a Section 4952 violation, "[t]he question of sufficiency is not assessed upon a diminished record." ***Commonwealth v. Smith***, 568 A.2d 600, 603 (Pa. 1989). The admissibility of the 2012 letters is a separate legal issue from Appellant's instant sufficiency claim, and Appellant's attempt to narrowly define the scope of the applicable record by considering the 2013 letters in isolation has no foundation in law. On sufficiency review, the Commonwealth is afforded all reasonable inferences from the evidence of record as it exists, and the record in this case includes the 2012 letters. Accordingly, we conclude that this sufficiency claim lacks merit.

Appellant also challenges whether this same evidence was sufficient to support his conviction for obstruction of justice at lower court docket number 3592-13. As set forth in his post-sentence motion, Appellant claims that "the intended recipient of the letters written by [Appellant] was Ms. Lopez, not a government official. Section 5101[] does not attack criminal liability for 'breach of official duty,' to individuals who are not government officials." Post-Sentence Motion, 4/6/15, at 2 (unnumbered pages). As with his previous claims, Appellant's Rule 1925(b) statement was boilerplate. In his brief, however, Appellant adds another argument: that there was insufficient evidence that he intended to obstruct justice because "the tone and content

of the letters were designed to communicate to Ms. Lopez his loving feelings for her and their son and to ask Ms. Lopez to consider resuming their relationship, not to prevent the administration of law." Appellant's Brief, at 21. This aspect of Appellant's instant sufficiency claim has been waived, because it was not raised as such in his post-sentence motion, and because the elements of Section 5101 under a sufficiency challenge were not addressed in his Rule 1925(b) statement. **Dowling**, **supra**. In any event, were we to reach this claim, we would find it meritless, as Appellant again mischaracterizes the evidence or, at least, he misconstrues the scope of the evidence of record pertaining to this offense. The record does not support Appellant's conclusion that the letters in question merely expressed affection for Ms. Lopez and their mutual son. The 2012 and 2013 letters show that Appellant solicited Ms. Lopez to provide false testimony, and that he did so by intimidation.

Appellant did preserve, however, the second aspect of his sufficiency claim with respect to Section 5101: whether he can be convicted of that offense when he ostensibly did not seek to directly influence a government official. Appellant argues that "there was no testimony that Appellant obstructed by an unlawful act or physical interference any law enforcement [official] from carrying [out] their official duties by writing loving letters to his former partner." Appellant's Brief, at 21. Section 5101 provides as follows:

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S. § 5101.

Appellant construes the language of this statute as requiring demonstration of the involvement of some government official. The trial court rejected this argument, suggesting that Appellant's letters constituted an "unlawful act" or "physical interference" that "obstruct[ed], impair[ed], or pervert[ed] the administration of law" in a general sense. 18 Pa.C.S. § 5101; TCO, at 38. The court stated that Appellant was not charged, and the jury was not instructed, under the "breach of official duty" element of the statute, but instead under the "any other unlawful act" element, thus dispensing with any requirement that a government official was directly influenced. TCO, at 39.

We agree with Appellant. Neither the trial court nor the Commonwealth cite to any case law sustaining, or even discussing, a conviction under Section 5101 with facts remotely analogous to the instant case. Our own research failed to identify a single published case upholding a conviction under Section 5101 where the alleged interference/obstruction/perversion of justice did not directly involve a government official, with one possible exception, discussed below. Here, we

- 21 -

have written communications from one private individual to another. And, whereas we agree that Appellant's letters constituted an attempt to intimidate a witness, addressed previously, and that such behavior constitutes an 'obstruction of justice' in the colloquial sense, it is not conduct specifically prohibited by Pennsylvania's obstruction of justice statute. Where reviewing a claim that raises an issue of statutory construction, our standard of review is plenary, and is governed by the following precepts:

Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. [§] 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following

- 22 -

presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Shiffler*, 879 A.2d 185, 189–190 (Pa. 2005) (citations omitted).

Here, the elements of Section 5101 can be broken down as follows: a violation occurs when a person (1) intentionally (2) obstructs, impairs or perverts (3) the administration of law or other governmental function (4) by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act (5) subject to specific exceptions and (6) a general exception for any other means of avoiding compliance with law without affirmative interference with governmental functions. 18 Pa.C.S. § 5101.

Here, we need not concern ourselves with elements (1), (2), (4) and (5), given our prior conclusions. Appellant's letter writing was facially intentional; it was an attempt to *obstruct* Ms. Lopez's testimony; the conduct constituted at least one unlawful act of intimidating a witness; and the specific exceptions do not apply to the facts of this case. Thus, the question before us is whether Ms. Lopez's testimony constituted "the administration of law or other government function," or, alternatively, whether Appellant's conduct was a "means of avoiding compliance with law without affirmative interference with government functions." *Id.* In either case, the critical

inquiry is whether Ms. Lopez's testimony is a "government function" within the meaning of the statute.[5]  We conclude that it is not.

The Crimes Code does not define the term "government function." However, a common sense definition is that a 'government function' is some lawful act or process carried out by an organ of the state.  This is quite similar to the definition provided by Black's Law Dictionary, wherein "government function" is defined as: "A government agency's conduct that is expressly or impliedly mandated or authorized by constitution, statute, or other law and that is carried out for the benefit of the general public." Black's Law Dictionary, 812 (10th ed. 2014).

Ms. Lopez's testimony does not constitute a "government function" within the unambiguous, plain meaning of that term.  18 Pa.C.S. § 5101. Certainly, the testimony of a witness assists the state in its performance of government functions, chief among them being the prosecution of criminal conduct.  However, Appellant did not write letters threatening or otherwise impeding the actions of the prosecutor in this case, and Ms. Lopez did not transform into an organ of the state through her participation in a criminal trial.  For the same reasons, Appellant's conduct in this case also falls within

---

[5] Given the construction, "the administration of law *or* other government function[,]" it is clear that "the administration of law" is but one of many possible government functions covered by the statute, not a separate concept in its own right.  18 Pa.C.S. § 5101 (emphasis added).

the general exception, as it did not constitute "affirmative interference with governmental functions." 18 Pa.C.S. § 5101.

Moreover, Appellant's acts fit squarely within the conduct prohibited by the witness intimidation statute, 18 Pa.C.S. § 4952. Thus, alternatively, even if we were to find that the language of this statute was ambiguous as to whether "government function" included a victim's/witness' testimony, we would still have no reason to believe that the legislature intended both statutes to cover Appellant's illegal acts. Section 5101 is remarkably broad in scope, but not so broad as to cover conduct not directly affecting or involving an organ of the state.

The instant case is distinguishable from the case relied on by the trial court, ***Commonwealth v. Snyder***, 60 A.3d 165 (Pa. Super. 2013). In ***Snyder***, the defendant, a security guard at a housing complex, was present at a meeting where the police discussed obtaining warrants to search an apartment in that complex as part of a homicide investigation. A few days later, the defendant was discharged after he had a disagreement with his supervisors. The evening following his discharge, the defendant told residents of the housing complex of the impending search, including the resident in the apartment he knew would be specifically targeted by the search, Mr. Henderson. The defendant was charged and convicted under Section 5101.

Under a sufficiency challenge, this Court affirmed the defendant's conviction for obstructing justice because he "physically interfered" with the

police search: "Viewing all the evidence admitted at trial in the light most favorable to the verdict winner, the jury could have reasonably concluded that [the defendant]'s actions in travelling to Mr. Henderson's apartment, knocking on the door, and informing him about the search warrants, constituted 'physical' interference with the administration of law." *Commonwealth v. Snyder*, 60 A.3d 165, 178 (Pa. Super. 2013).

The thwarted search involved in *Snyder* was clearly a government function, conducted by government agents. Moreover, the defendant in *Snyder* was not just any ordinary citizen: he was a private security guard with privileged access to a pending criminal investigation. The specific circumstances of that case are not, therefore, analogous to the instant case. Here, Appellant had no unique ability to thwart an imminent government function. Appellant attempted to dissuade a private citizen from testifying, he did not attempt to thwart the patently governmental function of a government agent conducting a lawful search. And, whereas Appellant's "physical" action was letter writing, the defendant in Snyder physically appeared at the site of the impending search to warn the target of that search. For these reasons, *Snyder* is not controlling and limited to the specific facts of that case.

Consequently, for the aforementioned reasons, we find that there was insufficient evidence to convict Appellant of obstruction of justice at lower court docket number 3592-13. Accordingly, we hereby reverse Appellant's

conviction for that offense. Nevertheless, because the trial court did not impose a sentence for that offense, re-sentencing is not required.

3.

Next, Appellant claims the trial court abused its discretion when it found meritless his weight of the evidence claims challenging his convictions for kidnapping and unlawful restraint at lower court docket number 3856-12. We apply the following standard of review to a claim that a verdict is against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason,

as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Appellant makes virtually the same arguments with regard to his weight claim(s) as with regard to his sufficiency claims addressing these same offenses. Generally, he argues that the testimonial evidence supporting his conviction(s) was inconsistent. However, Appellant at best demands that this Court view the evidence in a light most favorable to him, which does not at all reflect our standard of review of weight-of-the-evidence claims. Inconsistencies in trial testimony are normal in criminal trials, and there is no reason to believe that the jury was unaware of the inconsistencies that did exist. Often, however, Appellant's representations of the trial testimony are fundamentally disingenuous.

The trial court thoroughly dismantles Appellant's weight-of-the-evidence claim regarding these two offenses, point-by-point, ***see*** TCO, 40-57, and we ascertain no abuse of discretion in its dismissal of these claims.[6]

_____

[6] In summary, the trial court concluded:

That the testimonies of these witnesses differed in certain, largely immaterial, respects does not necessitate the award of a new trial. It is to be expected. Further, discrepancies between witnesses' testimonies are a matter exclusively within the province of the jury, who are free to accept or reject all, part, or

*(Footnote Continued Next Page)*

Thus, we rely on the court's analysis in concluding that Appellant's weight-of-the-evidence claims are meritless.

4.

Next, Appellant asserts that the verdict was against the weight of the evidence with respect to his conviction for witness intimidation and obstruction of justice at lower court docket number 3592-13. As to obstruction of justice, we have already determined that the evidence was insufficient to support Appellant's conviction for that offense. As such, this aspect of Appellant's weight claim is rendered moot.

As to his conviction for witness intimidation, Appellant reiterates his claim that the September 5th and 10th, 2013 letters he wrote to Ms. Lopez "lacked any threats compelling Ms. Lopez to change her conduct or to refrain from participating in the criminal proceedings against Appellant." Appellant's Brief, at 25. As noted previously, Appellant's theory disregards the threats contained in several previous letters that preceded his requests that Ms. Lopez present false testimony. Thus, this weight claim, a regurgitation of Appellant's sufficiency claim regarding the same offense as dismissed above,

_(Footnote Continued)_ ————————————

> none of the evidence presented, to resolve. We have demonstrated herein how these discrepancies can all reasonably be resolved in a manner consistent with the overwhelming weight of the evidence, including the compelling demonstrative evidence, supporting [Appellant]'s guilt for the crimes charged.

TCO, at 56-57.

suffers the same fundamental flaw in that it fails to take the full record supporting the charge into account, *i.e.*, the 2012 letters. For this reason, and for the reasons set forth in trial court's opinion, **see** TCO, at 62-64, Appellant's weight-of-the-evidence claim is meritless, and we ascertain no abuse of discretion by the trial court in its dismissal of that claim.

5.

Next, Appellant contends that the trial court erred when it denied his motion to sever. Appellant's three cases represent three separately timed, but ostensibly related, groups of offenses. First, Appellant was charged for the kidnapping-related offenses at lower court docket number 3856-12. Second, Appellant was charged with witness intimidation and terroristic threats at lower court docket number 1850-13 for the first set of letters he sent to Ms. Lopez soon after his arrest for kidnapping in 2012. Finally, at docket number 3592-13, Appellant was charged with witness intimidation and obstruction of law for the two letters he sent to Ms. Lopez in September of 2013.

> A motion for severance is addressed to the sound discretion of the trial court, and ... its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

**Commonwealth v. Dozzo**, 991 A.2d 898, 901 (Pa. Super. 2010).

Two rules of criminal procedure govern severance. Pa.R.Crim.P. 582 provides:

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A). Relatedly, Pa.R.Crim.P. 583 provides: "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together."

Appellant argues that he was prejudiced by the trial court's refusal to sever his cases. Confusingly, he states: "While it is possible that *a jury could have effectively separated the elements* of the individual events, it appeared that they did not." Appellant's Brief, at 27 (emphasis added). Appellant focuses his attention on the two sets of letters as the primary source of potential jury confusion. He then essentially contradicts his first statement by stating, "the fact that the string of letters was presented to the jury in a single joint trial, *could only serve to further confuse the jury*. In denying Appellant's motion to sever, the [t]rial [c]ourt disregarded that a year had elapsed between the first and second set of letters and that the content of each group varied considerably. Certainly, Appellant's frame of mind was significantly different after he had a year to reflect on the events of 2012." *Id.* at 28 (emphasis added).

Appellant has failed to demonstrate that the trial court abused its discretion. First, there is a clear, logical connection between these three cases, and the majority of evidence pertaining to each case was admissible in the others. Notably, each case involved the same victim, Ms. Lopez, and each offense flowed from the previous one. In the kidnapping case, the letters pertaining to the other two cases would have been admissible to demonstrate, at a minimum, Appellant's motive for committing the kidnapping and his consciousness of guilt. *See Commonwealth v. Lark*, 543 A.2d 491 (Pa. 1988) (holding evidence of threats made to witnesses after the first offense was committed was admissible to establish motive, intent, and consciousness of guilt for that offense). Furthermore, evidence of the kidnapping was admissible in each of the other cases because that was the offense regarding which Appellant sought to intimidate a witness. *See Commonwealth v. Young*, 468 A.2d 1127, 1128 (Pa. Super. 1983) (holding evidence of a prior shooting was properly admitted as materially relevant to the charge of witness intimidation).

Appellant argues that the details of the kidnapping were not necessary to establish the charges in the other two cases, but this is clearly not entirely true. The details of the kidnapping offense were relevant to show, *inter alia*, that Appellant was attempting to get Ms. Lopez to lie or otherwise mislead the court about that kidnapping offense in the subsequent letters.

These three cases formed a single narrative, beginning with the kidnapping, and continuing through Appellant's multiple attempts to

threaten and manipulate the testimony of the primary victim in a series of letters over the year following that offense. While there is inevitably some risk of confusion in joining criminal cases that involve events separated by time, Appellant has failed to demonstrate that he was *unduly* prejudiced by that potential, and the trial court mitigated that risk by issuing the following jury instruction:

> You should consider the cases as a separate individual case and the evidence and the law I give to you as it relates to each case just as you would if each case alone had been tried before you. Once again, you're trying three separate cases at one time. And for this reason, we'll have to pay especially close attention to the evidence to be able to properly segment it. You can consider with respect to each offense the evidence presented in support of the other offense for the limited purpose of establishing the defendant's identity and/or intent in determining whether the defendant committed each separate and distinct offense. You must not regard this evidence as showing the defendant is a person of bad character, therefore, has criminal tendencies from which you might be inclined to infer guilt.
>
> If you find the defendant to be guilty of committing any of the crimes charged, it must be because the Commonwealth has demonstrated by the evidence by proof beyond a reasonable doubt that the defendant committed each and every element of the crimes charged and not because you believe he is a bad person or has committed other offenses.

TCO, at 73 (quoting N.T., 11/6/14, at 299-300).

Appellant does not claim that he objected to this instruction, and "[t]he presumption in our law is that the jury has followed instructions." *Commonwealth v. Baker*, 614 A.2d 663, 672 (Pa. 1992). Accordingly, for aforementioned reasons, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to sever.

6.

Next, Appellant contends that the trial court's instructions to the jury, issued after Officer Codwright's testimony revealing Appellant's pre-trial incarceration during testimony discussing Appellant's letters to Ms. Lopez, did not adequately offset the prejudice caused by that remark. However, Appellant concedes that trial counsel "permitted the disclosure of Appellant's incarceration as part of his overall trial strategy." Appellant's Brief, at 31 n.1. Appellant then states that, "in light of the [t]rial [c]ourt's decision to handle ineffectiveness claims separately, Appellant will raise its effect at a later point." *Id.* Accordingly, we decline to address this claim until collateral review. In any event, it is apparent from the record (and Appellant's concessions) that this claim has been waived because there was no objection to the complained-of testimony. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

7.

Appellant also claims that the trial court erred when it permitted Ms. Lopez to testify about unauthenticated text messages ostensibly sent to her from Appellant's phone. Appellant complains that authentication was required to demonstrate that Appellant, rather than someone else, sent the messages. Appellant also contends that admission was improper because the text messages in question were not provided to the defense in discovery. The Commonwealth contends the messages were properly authenticated by

Ms. Lopez and, alternatively, that the admission of this testimony was harmless. We agree that any error in regard to the admission of this evidence was harmless.

> "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Drummond*, 775 A.2d 849, 853 (Pa. Super. 2001), *appeal denied*, 567 Pa. 756, 790 A.2d 1013 (2001). Harmless error exists if (1) the error did not prejudice the defendant or the prejudice was *de minimus*; (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar, and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence admitted at trial was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995). Thus, an error at trial, which viewed by itself is not minimal, may nonetheless be harmless, if it is merely cumulative of untainted and properly admitted evidence. *Commonwealth v. Story*, 476 Pa. 391, 411, 383 A.2d 155, 165 (1978) (setting standards for harmless error analysis). "In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error was harmless beyond a reasonable doubt rests upon the Commonwealth." *Drummond*, *supra* at 853 (quoting *Commonwealth v. Rasheed*, 536 Pa. 567, 570–71, 640 A.2d 896, 898 (1994)).

*Commonwealth v. Dent*, 837 A.2d 571, 582 n.2 (Pa. Super. 2003).

The ostensibly prejudicial nature of these messages was two-fold: a question exists whether the messages were actually sent by Appellant, and the messages conveyed specific threats to Ms. Lopez which were not subject to a criminal charge in these cases. Regarding the first aspect of Appellant's claim of prejudice, not only did Ms. Lopez testify that the messages were received from Appellant's phone number, she also reported the messages to

Corporal Call of the New Garden Township Police Department. Corporal Call testified that he called that same number and Appellant answered (although Corporal Call mistakenly believed that Ms. Lopez had received the threat by phone call, a mistake explained at trial as a result of language barrier issues caused by Ms. Lopez's sister's attempts to translate for her). TCO, at 88. Thus, even if improperly authenticated at trial, the risk that the messages were issued from a source other than Appellant's phone is minimal. Appellant also complains that it is possible that someone else used his phone to communicate the threating text messages; however, there was no reasonable way to disprove that possibility, even had the text messages been properly authenticated. Thus, in this regard, Appellant suffered no more prejudice as a result of any error than had the error not occurred.

As to the prejudicial nature of the threat itself, we conclude that any such prejudice was *de minimis* in comparison to the graphic and specific threats issued by Appellant in the first series of letters he sent to Ms. Lopez. While Ms. Lopez did state that Appellant's text messages threatened to beat her up and/or have someone rape her, her testimony regarding the threat(s) conveyed was limited to a few lines in a transcript that otherwise spanned 350 pages and three days of trial, and no transcript of that text message was available for the jury to review. Moreover, the prejudicial nature of the text message threat was slight in comparison to the threats issued by Appellant in his letters, which, among other things, had threatened to have Ms. Lopez thrown into a wood chipper. We conclude, therefore, that even if

improperly admitted, this evidence did not affect the fairness of Appellant's trial, and that the Commonwealth has proven beyond a reasonable doubt that Ms. Lopez's testimony regarding the messages was harmless error.

8.

Finally, Appellant argues that the trial court erred in permitting the prosecutor to ask Ms. Lopez leading questions due to a 'language barrier.' We disagree.

"The law in this area is clear. The allowance of leading questions lies within the discretion of the trial court and a court's tolerance or intolerance of leading questions will not be reversed absent an abuse of discretion." **Katz v. St. Mary Hosp.**, 816 A.2d 1125, 1128 (Pa. Super. 2003). "A leading question suggests or provides the answer desired by putting words in the witness's mouth." **Commonwealth v. Stultz**, 114 A.3d 865, 882 (Pa. Super. 2015).

The objection referred to by Appellant in his brief concerned the question, "Do you recall any threats directed towards your mother and your sister?" N.T., 11/3/14, at 37. As noted by the trial court in its opinion, this question did "not suggest a desired answer, it merely orient[ed] the witness towards the context of the subject matter under inquiry." TCO, at 115. We agree. Although this question could be construed as requesting a yes-or-no answer, neither an affirmative nor a negative answer was suggested or prompted by the question itself. The form of the question was proper.

The trial court did state, in direct response to Appellant's leading question objection, that "even if it is a bit leading, due to the language barrier, I'm going to allow it." N.T., 11/3/14, at 37-38. However, regardless of the court's initial reasoning for permitting the form of the question, the question at issue was not, in fact, leading. Therefore, we ascertain no abuse of discretion in the trial court's overruling Appellant's objection.

In conclusion, we reverse Appellant's conviction for obstructing justice at lower court docket number 3592-13, but affirm his judgment of sentence in all other respects.

Judgement of sentence **affirmed** in part, **reversed** in part. Jurisdiction **relinquished**.

Judge Lazarus joins this memorandum.

PJE Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/23/2016